Good morning, my name is Suzanne Lee-Elliott, counsel, and with me at counsel table is Ms. Anne Schwartz who also assisted on the brief in this matter. I represent Mr. Ocampo in this 2254 petition to challenge his murder conviction out of Pierce County Superior Court and as I'm sure this court is well aware there may be three problems for the state prosecutor. The first is he had no forensic evidence tying Ocampo to the murder in this case. Second is his eyewitness was a juvenile who actually had confessed twice to correction workers to the murder and then had changed his story prior to trial and he became the only eyewitness to the murder and he had of course a significant motive to blame Mr. Ocampo as the shooter. Was Ocampo a juvenile at that time? You know, your honor, he was close but I don't recall. There's no decline reference so I assume he was over 18 at the time and I don't know if Missile, the missing witness, Missile was a juvenile or not either but under Washington law when you have a homicide if you're over 16 everyone's charged in adult court under what we call the auto decline procedure. So I wonder if you would address the procedural problem if we choose to recognize it that counsel did not object at the trial to what you now make an issue of. The Court of Appeals Division law did say that Ocampo's comments complained of. But it did. Pardon me? The fact that counsel did object, at least a part of it. To part of it. There was a discussion about, I mean it's a little confusing, there is a discussion on the record later about actually Crawford and I think Mr. Berenberg says we don't want to go down that road and the court says no we don't. Where was the objection? There was no objection to Detective Ringer's statement that implied the contents of the missing witnesses statement. Right. So there is no objection. There is no objection. Can I just clarify something? So that's the part that you're relying on and not the later piece where he said we don't want to go through the Crawford route. Well, there are two places where Detective Ringer. Right, I know. And you seem to be suggesting that you're relying on the first one which was a non-objected to one. No, we're relying on both. But there's a non-objected to one and then there's one where the court does sustain the objection, or at least there's some agreement they're not going to continue down that road of questioning. So they agreed not to go down that road. That is correct until closing argument in which, when the prosecutor says. That's not the cross-examination. That's the argument. No. I agree. So what happens in Washington is. You don't have a confrontation cause problem. You have a problem with the argument. Was there an objection to the argument? There was no objection to the argument. No. So I don't think there was any objection. So how do you confront that problem? Well, the Washington State Supreme. This gets back to the issue, the factual issue, which the Washington State Supreme Court or Court of Appeals said in Washington, you can raise a constitutional issue for the first time on appeal if the error is manifest. That's their first reason for not granting Mr. Ocampo relief. And they say the issue in this case was not manifest because Detective Ringer did not testify to. It wasn't manifest to us because all he did was imply the that they, well, that's what Detective Ringer says is the missing witness verifies that my client, Mr. Ocampo, was there and corroborates the testimony of the juvenile. But just a minute. Could you go, the part of the record that you're now relying on, as I understand it, could be read as saying that only verified was that certain people who were identified as being there weren't there? I'm sorry, Your Honor, which I'm talking about, I guess it's 1017 of the excerpts of record where it says there were some other people that they knew but had not actually been involved in the shooting. How did you determine that? Well, we spoke to Hernandez and then Vela and he gave a statement that verified what Hernandez said and still later Vasquez was interviewed and he also verified the other two and these two excluded several individuals that had not been named that night and that's all they're talking about at that point. That is correct. Is that the piece you're relying on? We are relying on the piece that says, Your Honor, and it's quoted in the reply brief, the Detective Webb testified. So you're relying on the Webb one. ER 1190, ER 1264. And then in Detective Ringer's testimony, we are relying on ER 1264, 1256. Could you read what you're relying on? I can, Your Honor. Detective Webb says, Okay, during this time, the prosecutor asked, During this time you were investigating this case, did you have occasion to speak with myself, Vasquez? Yes. And you identified, he was identified as being an occupant and you recall when you spoke to him, August 10th. Were those facts, and then he asked him, What did he say? Were those facts consistent with objection, Your Honor? We have a right to confront the witness, meaning Vasquez, sustained. On redirect, they ask, You got statements from Michelle Vasquez after you got the statements from Vladimir Velay, after your statements from Objection mischaracterizes the evidence. Is there a reason you didn't later go back and show the photo montages with Santa El Campo to witnesses? I would say we had a co-conspirator that had confessed to the crime and two additional witnesses who implicated the defendant. Referring then again to Michelle Vasquez. Is it clear that it's Vasquez? It's clear there were four occupants of the vehicle. So, Velay, who was the driver, the other witness, Fernandez, alleged it's El Campo, and then Vasquez. If you believe the state's case, El Campo was the fourth person in the van. He, of course, had alibi witnesses who said he was not. He never testified. He did not testify. Then Detective Ringer goes on at pages 13 to 14 of our brief. Clearly, the prosecutor understood these witnesses to be testifying to the substance of Vasquez's, Miguel Misao Vasquez's testimony, statements, because in closing argument, he argues to the jury that the statements of the juvenile eyewitness are corroborated. And that detectives, the detectives in this case corroborated those statements by talking with Vasquez and finding him to be reliable or his statements to be reliable and to validate what the other witnesses had said. So, despite the fact that Detective Ringer and Detective Webb did not read verbatim the statements of Misao Vasquez, there was a confrontation problem in this case. And the way the Washington State Court of Appeals analyzes this by saying that it is the detectives here that only implied the outlines of those statements just, in our view, is an end run around the confrontation clause. At that point, you could smuggle in all sorts of hearsay by simply outlining the statements of the missing witness. That is the main challenge to the State case. I would point out that the Court of Appeals also goes on to suggest that the error was harmless. In this case, as we've noted in our reply brief, the prosecutor relied heavily on this implied statement in closing argument. And, in fact, had another problem in that under Washington law, the jury is instructed to view the testimony of an accomplice with great caution. And so it was important for him to have corroborating and verifying information. And he relied on the implied statement of the missing witness to provide that. Okay. Thank you very much. Mr. Rosen. May it please the Court. My name is Greg Rosen. I represent the respondents in this matter. This Court should affirm the decision of the District Court. The Supreme Court has not held that an officer verifying another person's statement without disclosing the content of that statement was testimonial. There is no definitive Supreme Court case that addresses this situation. Consequently, the State Court's decision in this particular case. Well, I think there's any possibility. What exactly are you saying the Supreme Court hasn't decided? If the district, if the witness had said that Mr. Vasquez said that Mr. Acampo was present, but without any words or anything, but just said that, would that come within clearly decided Supreme Court law? No, Your Honor. The Supreme Court has not held that an officer, when they testify as to a declarance statement given to the officer, was testimonial. What the Supreme Court said in Crawford was that the Confrontation Clause bars the admission of testimonial statements. So you think unless it's in quotations, it doesn't count? I'm sorry? Unless it's in quotation marks, it doesn't count? That's true, but I hadn't finished my statement. That's an awfully difficult position. But the Supreme Court has not held that way. The Supreme Court hasn't held that the admission of an officer's verification statement without disclosing the actual content of that statement was testimonial. Well, that's why I'm trying to find out what you mean by content. Do you mean the way I said it, you certainly had the content, you just didn't have the quotation marks. You don't have Mr. Vasquez's words. Mr. Vasquez's statements to the officers were not summarized. His words were not repeated. They weren't paraphrased. There was no aspect of Mr. Vasquez's words that were disclosed to the jury. You draw a distinction between actual words and a paraphrase. Has the Supreme Court drawn that line? Not that I'm aware of, Your Honor. So why should we draw it? I mean, you can read the Supreme Court to say generally, using a statement of another, introduced as evidence in the case is testimonial. That's correct, but that didn't happen here. So, I mean, you want us to pass the Supreme Court very narrowly, but there's no compulsion to do that. We can interpret it broadly. Because once this comes in as evidence, it does come in as evidence, we can characterize it as testimonial. The issue is what precisely came in, Judge Noonan. All, as Judge Berzon pointed out earlier in questioning counsel, Ringer's testimony at ER 1017 was made in the context of describing his investigation. Right. But that's a different problem. I'm trying to find out what your legal argument is first, and then we'll get to the facts. I mean, your legal argument goes way beyond this case. And it essentially, in the example I gave you, where it's plain that the testimony is that somebody said X, not being words, but said that such-and-such, you would say that doesn't count. I'm indicating if it was a testimonial statement that was disclosed to the jury, then I would agree. But you're defining testimonial statement as having to be quotation marks. Is that right? No, Your Honor, I'm not. Okay. I'm defining testimonial statement as substantive evidence that was disclosed to the jury as to what the declarant actually said. And if it said Ocampo, Vasquez said that Ocampo pulled the trigger. Does that count? Yes. That's clearly a fact. You just said before that not. No, I did not, Your Honor. Vasquez said that Ocampo was present. Does that count? It counts as evidence that Ocampo was present. But the issue in this case is whether — I understand. Does that count as a Confrontation Clause problem? I would say no, Your Honor, it does not. The Supreme Court has not held as such. And because it has not held as such, the State Court's decision here cannot have been an objectively unreasonable application of either Crawford or any Supreme Court precedent. And that's the burden that Ocampo bears in order to gain federal habeas relief. Could I ask you something of a different kind? If you strike that statement and ignore the accomplice's statement, what evidence is there that Ocampo was involved in the shooting? Jose Hernandez testified, Your Honor, that Mr. Ocampo shot the victim in the back of the head. Additionally, Detective Ringer testified — So Hernandez is a separate person who doesn't have any — has no big problem with his testimony. Is that right? No, Your Honor, there is not. And it's up to — there was challenges to Mr. Hernandez's credibility by the defense attorney, clearly, during closing. But the jury was instructed here that they are the sole judges of credibility. They made the determination that Hernandez was — Yes, but they made it, arguably at least, with the fact that they were told that this other person, who didn't have any reason to be lying, had corroborated it. Your Honor, over the course of an 879-page transcript, I would respectfully submit that those references made by Detective Ringer and Detective Webb as to Vasquez's statement were not substantial and injurious in determining the jury's verdict. But I'd indicate to the panel, and I guess specifically to Judge Nunez, because this was your question, Your Honor, as to the other evidence that was before the jury, in addition to the direct evidence that Jose Hernandez shot Mr. Castro in the head. Detective Ringer also testified — Ocampo shot — Thank you, Your Honor. I meant Mr. Ocampo shot Mr. Castro in the back of the head. Detective Ringer testified that Vela, quote, was certain, end quote, about his identification of the person later determined to be Ocampo from a photograph as one of the two persons in the back of Vela's van. And that can be found at ER 1031-1034. But in addition, Ringer also testified that Vela said he heard one of the two guys in the back of his van say, I shot him. And I was tripping, so I had to shoot him. And that's at ER 921. This inculpatory evidence, above and beyond, even if this Court finds that the references, the brief references, the isolated references by the two detectives — I believe Mr. Hernandez testified that he was not in the back of the car. I thought one of them said he was in the front and one said he was in the back. Mr. Vela was driving the van. He owned the van. Right. As I recall, Mr. Hernandez was in the front passenger seat. Well, but one — I can't remember exactly which. But Mr. Velas or Mr. Hernandez, one of them said that Hernandez was in the front, but the other one said Hernandez was in the back. So we don't know that Hernandez wasn't in the back. Well, the jury couldn't know. That's not my recollection of the trial record. But the Court may be correct. Our position is that even if there was a Crawford error, and I would respectfully submit that there was not for the reasons I've stated, the inculpatory evidence on this error, alleged error, was evaluated in light of the entire record, the entire 879-page trial record, was not of substantial and injurious effect in determining the jury's verdict here. Just to be clear about one thing, are you arguing that there's a procedural bar or not? In what respect, Your Honor? With regard to the lack of an objection as to some of the statements. Well, I think the lack of an objection goes to the lack of actual prejudice, and that's also what can be — But you're not claiming there's a procedural bar. No, not as a procedural bar, but I think the lack of an objection. And there was the lack of an objection at ER 1017. There was no objection by defense counsel. And Mr. O'Campbell has to demonstrate, again, actual prejudice underbred. If it was that prejudicial, if it was that important in determining a jury's verdict, one would reasonably infer that defense counsel would have, in fact, said it. Well, you could also say the opposite. And I always — this always disturbs me about the homicidal arguments, which is that if it wasn't important, it wouldn't have been stressed so often, especially in the closing argument. So for the government to come in and say this really didn't matter when it was argued quite specifically in the closing argument is not — doesn't sit all that well. Well, but I think you have to — you can't look at ER 1017 and the lack of an objection there in isolation. Because if you look at ER 1059, when I believe Ringer was testifying, and ER 1237-38, counsel did object there. He objected twice. So counsel is well aware. So you would be — I would agree with you, Judge Berzon, if we're looking at ER 1017, no objection in isolation, I'd probably — I agree with your reasoning. But counsel didn't object on two other occasions as well. Well, could you just clarify? In your brief, you did not raise a state procedural bar, did you? I did not. And you're not raising it now? I'm not raising it now, but I'm indicating that the lack of an objection by counsel goes toward the failure on the part of Ocampo to show actual prejudice. All right. Thank you. Thank you. Hernandez, I believe, if the brief is to be credited, Hernandez testified that he was in back. Okay. Vela testified that Hernandez was in front. Okay. So if Vela was mistaken, the statement that somebody in the back said they shot him doesn't necessarily help the prosecution. It just depends who's right about where Hernandez was. That's true, Your Honor. But as I indicated, the jury was instructed here, as juries are always instructed, that they are the sole judges of credibility. Yeah, I understand that. And they made the determination as they did. They found Ocampo guilty. And as to counsel arguing or the prosecution arguing corroboration, as Judge Noonan pointed out, juries are standardly instructed, and they were instructed here, that the arguments of counsel are not evidence. Can I come back a moment with regard to the legal argument? From what in Crawford or in Davis or anything else in the Supreme Court opinions do you get the impression that a testimonial statement has to be a quotation? Your Honor, respectfully, I didn't mean to imply quotations. I don't think I used the word quotations. But I think those few cases that the Supreme Court has discussed what testimonial means, the actual statements of the person have come before the record. If you look at the Crawford case itself, Sylvia Crawford's tape-recorded statements were played for the jury. You contrast those facts with Ocampo's case in which you've got references, some brief references by officers as to talking to Vasquez, not disclosing the content. But if you go back to any rationale of the Confrontation Clause, which is that people's information from somebody who wasn't there should not be communicated, what possible difference could it make whether it is a summary of a statement or a statement as to whether there is a confrontation point where you still want to have the guy on the stand and cross-examine him and you don't? But Mr. Vasquez's words, the actual statement. I'm trying to get you to relate that to some rationale, how anybody could make such a distinction and make sense with regard to the Confrontation Clause. Your Honor, the argument that I'm trying to make to the Court is that the Confrontation Clause is not there in court to testify. But in this particular case, Vasquez's statements were not disclosed to the jury. That is what makes all the difference. And so if the officer testifies, well, Vasquez indicated that Ocampo did it. That's not good enough. Can the Court please repeat its question? I didn't hear clearly. If the officer says, well, you know, I talked to Vasquez and he said that Ocampo did it. Clearly a Crawford violation. That would clearly be a Crawford violation. That's not what happened here. So what is the distinction, Your Honor? If he said Ocampo did it, that's no good. But if he says Ocampo was present, that's not a Confrontation Clause problem. Why? Because Judge Canby's questions used Mr. Vasquez's words. No, they didn't. I don't think he mentioned. He said Ocampo said, Vasquez said that Ocampo did it. As communicated through Detective Ringer as the witness, I assume. What if then, what we have here, though, is, well, I talked to Vela and he said Ocampo was there. And then Vasquez verified that. Yes. Doesn't that mean Vasquez also said that Ocampo was there? Well, that could be a reasonable inference as to what was said. A reasonable inference could be the reverse as well, that it was not a Confrontation Clause error. And if both are susceptible, if there's two reasonable interpretations, then the Supreme Court has said in Rice that What is the other reasonable interpretation of Vasquez? If Vela said Ocampo was there and Vasquez verified it, what other reasonable interpretation is there of that other than Vasquez also said that Ocampo was there? The reasonable interpretation is that Detective Ringer's testimony was made in the context of describing the nature of his investigation, and he did not disclose the actual words from Mr. Vasquez at that time. Okay. May I make one additional point? Go ahead. Let me make one additional point, if I may. I know I'm way over time. You are. I apologize. If there's two reasonable interpretations, one is that there was a Confrontation Clause violation here, Crawford was violated, based on some of the questions the panel has directed. And the opposite, that because Vasquez's exact statements and words were not communicated or disclosed to the jury, there was not a Confrontation Clause violation. If there are two possible reasonable interpretations, the Supreme Court has made clear in Rice v. Collins that if reasonable minds reviewing the same record disagree about the correct resolution of an issue, that's not sufficient for habeas corpus. All right. I think we know that. Okay. Thank you very much. Thank you. We'd ask Mr. Crawford to continue. I'll give you one minute, or say two in rebuttal, since he was five minutes over. Go ahead. Very briefly, Your Honor, in rebuttal. We have one I would like to say, that there is a whole line of cases about officers offering hearsay as to explain their next step in the investigation subject to controversy, which I read while preparing this brief. But that was not the basis of the Court of Appeals' opinion in this case. And so I don't think it's fair to say that this Court can affirm on that basis, the Washington State Court of Appeals. As to the determination of what is a statement under Crawford, the best that the appellant in this case has to offer is the definition of statement found in ER 801A1 and 2, which are the Washington hearsay rules. And Washington has a very broad definition of statement. It says an oral or written assertion or even nonverbal conduct intended as an assertion. So there's nothing in the hearsay definition of the rule-oriented definition of statement in Washington that suggests that it has to be the verbatim repetition of what the witness said. So given this broad definition of statement under the Washington rules, it would be unreasonable to read Crawford to say that it must be the verbatim statement. Are there – this Court has no post-ed ruling on this. How about any other Court of Appeals? I think maybe one. I could find nothing in terms of statement. In fact, when doing my research, what I found was this controversy over whether or not the statement is, well, based upon what Mr. Smith told me, I then went and got a warrant, which also implies certain information. Perhaps a much more ambiguous statement than was given in this case. Clearly, the prosecutor, in closing, thought that everybody in the courtroom, I think, knew that what Mr. Vasquez said was that Mr. Ocampo was there and was the shooter because he said he confirmed or verified Hernandez. There is a dispute over positions in the vehicle. All of the record sites are in our reply brief. Mr. Hernandez does say that Mr. Vasquez was in the front seat. Mr. Vela testified twice. Once at – well, his statements came up twice. Once in the context of his identification from a Polaroid and then at trial. And it's the appellant's – again, it's cited in our reply brief, but it's our assertion that at trial Mr. Vela did not identify Mr. Ocampo as being in the car. In fact, was exceedingly vague. And that is at page ER 930 to 31. Okay, you're back. Why don't you comment on Hernandez's testimony? Mr. Hernandez said that Mr. Ocampo – oh, in terms of where he was seated in the vehicle? No, actually, the shooting. I'm sorry? As to the shooting. Mr. Hernandez said first twice I did it, and then he said Mr. Ocampo did it. Well, he said first Ocampo did it, then he said I did it, then he said Ocampo did it. First he said – yes, exactly. He had a varying recollection of what happened that evening. Thank you. Okay, thank you very much. I'd like to thank you and Mr. Rosen. I thought this was very well argued. I think it's a fairly close case, but it was well argued. Thank you, Your Honor. Thank you. Ocampo v. Vail is submitted.
judges: Canby, Noonan, Berzon